MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ANDRES CARRILLO, EDSON ABEL MEZA
ALVAREZ, EDWIN ALEJANDRO MORAN
SALAS, ISRAEL MURGUEITIO CORDOVA,
JESUS ORELLANA, MANUEL CHUQUI,
MANUEL MESIAS CHALCO LUCERO,
PERCY PREMPEH-MANN, and RAUL
CHAVEZ DIAZ, *individually and on behalf of
others similarly situated,*

                                        *Plaintiffs*,

                -against-

KAY WATERPROOFING CORP. A.K.A. K
RESTORATION & ROOFING CORP. (D/B/A
K RESTORATION & ROOFING), KAY
SALES CORP. (D/B/A K RESTORATION &
ROOFING), KAY CONSTRUCTION CORP.
(D/B/A K RESTORATION & ROOFING),
MONSTER CONSTRUCTION LLC (D/B/A
MONSTER CONSTRUCTION), GALICIA
CONSTRUCTION CO., INC.      (D/B/A
GALICIA      CONTRACTING      AND
RESTORATION),              GALICIA
CONTRACTING   AND   RESTORATION
CORP. A.K.A. GALICIA CONTRACTING
CORP. (D/B/A/ GALICIA CONTRACTING
AND      RESTORATION),      BARRY
GRUMMER, SAUL GONZALEZ, ALEX
ROSENBLATT, RONALD W SR HAMPSON,
MANUEL   MINNINO,   STEVEN   KATZ,
TONY RODRIGUEZ, RONALD DUARTE,
ERIC HERMOSILLO, and MANUELA PAZ,

                                        *Defendants.*
-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Andres Carrillo, Edson Abel Meza Alvarez, Edwin Alejandro Moran Salas, Israel Murgueitio Cordova, Jesus Orellana, Manuel Chuqui, Manuel Mesias Chalco Lucero, Percy Prempeh-Mann, and Raul Chavez Diaz , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Kay Waterproofing Corp. a.k.a. K Restoration & Roofing Corp. (d/b/a K Restoration & Roofing), Kay Sales Corp. (d/b/a K Restoration & Roofing), Kay Construction Corp. (d/b/a K Restoration & Roofing), Monster Construction LLC (d/b/a Monster Construction), Galicia Construction Co., Inc. (d/b/a Galicia Contracting and Restoration), Galicia Contracting and Restoration Corp. a.k.a. Galicia Contracting Corp. (d/b/a Galicia Contracting and Restoration) ("Defendant Corporations"), Barry Grummer, Saul Gonzalez, Alex Rosenblatt, Ronald W Sr Hampson, Manuel Minnino, Steven Katz, Tony Rodriguez, Ronald Duarte, Eric Hermosillo, and Manuela Paz ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants Kay Waterproofing Corp. a.k.a. K Restoration & Roofing Corp. (d/b/a K Restoration & Roofing), Kay Sales Corp. (d/b/a K Restoration & Roofing), Kay Construction Corp. (d/b/a K Restoration & Roofing), Monster Construction LLC (d/b/a Monster Construction), Galicia Construction Co., Inc. (d/b/a Galicia Contracting and Restoration Corp.), Galicia Contracting and Restoration Corp. a.k.a. Galicia Contracting Corp. (d/b/a Galicia Contracting and Restoration), Barry Grummer, Saul Gonzalez, Alex Rosenblatt, Ronald W Sr Hampson, Manuel Minnino, Steven Katz, Tony Rodriguez, Ronald Duarte, Eric Hermosillo and Manuela Paz.

2.       Defendants own, operate, or control six construction companies: Kay Waterproofing Corp. (a.k.a. K Restoration & Roofing Corp.), Kay Sales Corp., and Kay Construction Corp. located at 211 E 123rd Street, New York, NY 10035 under the name "K Restoration & Roofing"; Monster Construction LLC located at 67 Church St Garnerville, New York, 10923, under the name "Monster Construction"; Galicia Construction Co., Inc. and Galicia Contracting and Restoration Corp. a.k.a. Galicia Contracting Corp. located at 4320 54th Rd, Maspeth, NY 11378, under the name "Galicia Contracting and Restoration".

3.       Upon information and belief, individual Defendants Barry Grummer, Saul Gonzalez, Alex Rosenblatt, Ronald W Sr Hampson, Manuel Minnino, Steven Katz, Tony Rodriguez, Ronald Duarte, Eric Hermosillo and Manuela Paz, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the construction corporations as a joint or unified enterprise.

4.       Plaintiffs were employed as construction laborers, mechanics, foremen, scaffold workers, bricklayers, and brick leaders at the construction corporations located at 211 E 123rd Street, New York, NY 10035, at 67 Church St Garnerville, New York, 10923, and at 4320 54th Rd, Maspeth, NY 11378.

5.       At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

6.       Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.       Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

8.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

10.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

11.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

13.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate six construction companies located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

14.    Plaintiff Andres Carrillo ("Plaintiff Carrillo" or "Mr. Carrillo") is an adult individual residing in Bronx County, New York. Plaintiff Carrillo was employed by Defendants at K Restoration & Roofing from approximately October 2018 until on or about November 2018.

15.    Plaintiff Edson Abel Meza Alvarez ("Plaintiff Meza" or "Mr. Meza") is an adult individual residing in Bronx County, New York. Plaintiff Meza was employed by Defendants at K Restoration & Roofing from approximately August 2, 2018 until on or about November 2018.

16.    Plaintiff Edwin Alejandro Moran Salas ("Plaintiff Moran" or "Mr. Moran") is an adult individual residing in Queens County, New York. Plaintiff Moran was employed by Defendants at K Restoration & Roofing and Galicia Contracting and Restoration from approximately September 2018 until on or about November 2018.

17.    Plaintiff Israel Murgueitio Cordova ("Plaintiff Cordova" or "Mr. Cordova") is an adult individual residing in Essex County, New Jersey. Plaintiff Cordova was employed by Defendants at K Restoration & Roofing from approximately September 2018 until on or about November 2018.

18.    Plaintiff Jesus Orellana ("Plaintiff Orellana" or "Mr. Orellana") is an adult individual residing in Kings County, New York. Plaintiff Orellana was employed by Defendants at K Restoration & Roofing and Monster Construction from approximately August 2, 2018 until on or about November 2018.

19.    Plaintiff Manuel Chuqui ("Plaintiff Chuqui" or "Mr. Chuqui") is an adult individual residing in Queens County, New York. Plaintiff Chuqui was employed by Defendants at K

Restoration & Roofing and Galicia Contracting and Restoration from approximately October 2018 until on or about November 2018.

20.    Plaintiff Manuel Mesias Chalco Lucero ("Plaintiff Chalco" or "Mr. Chalco") is an adult individual residing in Queens County, New York. Plaintiff Chalco was employed by Defendants at K Restoration & Roofing and Monster Construction from approximately May 2018 until on or about November 2018.

21.    Plaintiff Percy Prempeh-Mann ("Plaintiff Prempeh-Mann" or "Mr. Prempeh-Mann") is an adult individual residing in Kings County, New York. Plaintiff Prempeh-Mann was employed by Defendants at K Restoration & Roofing and Monster Construction from approximately October 2018 until on or about November 2018.

22.    Plaintiff Raul Chavez Diaz ("Plaintiff Chavez" or "Mr. Chavez") is an adult individual residing in Queens County, New York. Plaintiff Chavez was employed by Defendants at K Restoration & Roofing and Monster Construction from approximately September 2018 until on or about November 2018.

*Defendants*

23.    At all relevant times, Defendants owned, operated, or controlled six construction companies, Kay Waterproofing Corp. (a.k.a. K Restoration & Roofing Corp.), Kay Sales Corp., and Kay Construction Corp. located at 211 E 123rd Street, New York, NY 10035 under the name "K Restoration & Roofing"; Monster Construction LLC located at 67 Church St Garnerville, New York, 10923, under the name "Monster Construction"; Galicia Construction Co., Inc. and Galicia Contracting and Restoration Corp. a.k.a. Galicia Contracting Corp. located at 4320 54th Rd, Maspeth, NY 11378, under the name "Galicia Contracting and Restoration".

24.    Upon information and belief, Kay Waterproofing Corp. a.k.a. K Restoration & Roofing Corp. (d/b/a K Restoration & Roofing) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 211 E 123rd Street, New York, NY 10035.

25.    Upon information and belief, Kay Sales Corp. (d/b/a K Restoration & Roofing) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 211 E 123rd Street, New York, NY 10035.

26.    Upon information and belief, Kay Construction Corp. (d/b/a K Restoration & Roofing) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 211 E 123rd Street, New York, NY 10035.

27.    Upon information and belief, Monster Construction LLC (d/b/a Monster Construction) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 67 Church St Garnerville, New York, 10923.

28.    Upon information and belief, Galicia Construction Co., Inc. (d/b/a Galicia Contracting and Restoration Corp.) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 4320 54th Rd, Maspeth, NY 11378.

29.    Upon information and belief, Galicia Contracting and Restoration Corp. a.k.a. Galicia Contracting Corp. (d/b/a Galicia Contracting and Restoration Corp.) is a domestic corporation

organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 4320 54th Rd, Maspeth, NY 11378.

30.   Defendant Barry Grummer is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Barry Grummer is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Barry Grummer possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

31.   Defendant Saul Gonzalez is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Saul Gonzalez is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Saul Gonzalez possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

32.   Defendant Alex Rosenblatt is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Alex Rosenblatt is sued individually in his capacity as a manager of Defendant Corporations. Defendant Alex Rosenblatt possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of

Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

33.    Defendant Ronald W Sr Hampson is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ronald W Sr Hampson is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Ronald W Sr Hampson possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

34.    Defendant Manuel Minnino is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Manuel Minnino is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Manuel Minnino possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

35.    Defendant Steven Katz is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Steven Katz is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Steven Katz possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the

wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

36.    Defendant Tony Rodriguez is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Tony Rodriguez is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Tony Rodriguez possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

37.    Defendant Ronald Duarte is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ronald Duarte is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Ronald Duarte possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

38.    Defendant Eric Hermosillo is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Eric Hermosillo is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Eric Hermosillo possesses operational control over Defendant Corporations, an ownership interest

in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

39.    Defendant Manuela Paz is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Manuela Paz is sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Manuela Paz possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

Defendants operate six construction companies located in the East Harlem section of Manhattan, in the Maspeth section of Queens and in Rockland County New York.

40.    Individual Defendants, Barry Grummer, Saul Gonzalez, Alex Rosenblatt, Ronald W Sr Hampson, Manuel Minnino, Steven Katz, Tony Rodriguez, Ronald Duarte, Eric Hermosillo, and Manuela Paz possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

41.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

42.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

43.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

44.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

45.    Upon information and belief, Individual Defendants Barry Grummer, Saul Gonzalez, Ronald W Sr Hampson, Manuel Minnino, Steven Katz, Tony Rodriguez, Ronald Duarte, Eric Hermosillo and Manuela Paz operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e)   operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f)   intermingling assets and debts of their own with Defendant Corporations,

g)   diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h)   Other actions evincing a failure to adhere to the corporate form.

46.   At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.

47.   Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

48.   During 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

49.   In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the construction corporations on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

50.   Plaintiffs are former employees of Defendants who were employed as construction laborers, mechanics, foremen, scaffold workers, bricklayers, and brick leaders.

51.   Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Andres Carrillo*

52.   Plaintiff Carrillo was employed by Defendants from approximately October 2018 until on or about November 2018.

53.   Defendants employed Plaintiff Carrillo as a mechanic and a helper.

54.   Plaintiff Carrillo regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

55.   Plaintiff Carrillo's work duties required neither discretion nor independent judgment.

56.   Throughout his employment with Defendants, Plaintiff Carrillo regularly worked in excess of 40 hours per week.

57.   From approximately October 2018 until on or about November 2018, Plaintiff Carrillo worked from approximately 8:00 a.m. until on or about 4:30 p.m., three days a week and from approximately 8:00 a.m. until on or about 5:00 p.m. to 5:30 p.m., two days a week (typically 43.5 to 44.5 hours per week).

58.   Throughout his employment, Defendants paid Plaintiff Carrillo his wages in cash.

59.   From approximately October 2018 until on or about November 2018, Defendants paid Plaintiff Carrillo a fixed salary of $600 per week.

60.   For approximately six days (or one working week and a day), Defendants did not pay Plaintiff Carrillo any wages for his work, which is approximately $720.

61.   Plaintiff Carrillo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

62.   For example, Defendants required Plaintiff Carrillo to work an additional 30 minutes to 1 hour past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

63.   Defendants never granted Plaintiff Carrillo uninterrupted breaks or meal periods.

64.     Although Defendants kept a timesheet to record Plaintiff Carrillo's hours, said timesheet was not always available for Plaintiff Carrillo to fill out. Thus, Defendants' time-tracking system was not accurate.

65.     Defendants required Plaintiff Carrillo to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

66.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Carrillo regarding overtime and wages under the FLSA and NYLL.

67.     Defendants did not provide Plaintiff Carrillo an accurate statement of wages, as required by NYLL 195(3).

68.     Defendants did not give any notice to Plaintiff Carrillo, in English and in Spanish (Plaintiff Carrillo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

69.     Defendants required Plaintiff Carrillo to purchase "tools of the trade" with his own funds—including a hammer, fall protection harness, a lock and a measuring tape.

*Plaintiff Edson Abel Meza Alvarez*

70.     Plaintiff Meza was employed by Defendants from approximately August 2, 2018 until on or about November 2018.

71.     Defendants employed Plaintiff Meza as a foreman.

72.     Plaintiff Meza regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

73.     Plaintiff Meza's work duties required neither discretion nor independent judgment.

74.     Throughout his employment with Defendants, Plaintiff Meza regularly worked in excess of 40 hours per week.

75.    From approximately August 2, 2018 until on or about November 2018, Plaintiff Meza worked from approximately 8:00 a.m. until on or about 4:30 p.m. to 6:00 p.m., five days a week (typically 42.5 to 50 hours per week).

76.    Defendants never granted Plaintiff Meza uninterrupted breaks or meal periods.

77.    Throughout his employment, Defendants paid Plaintiff Meza his wages in cash.

78.    From approximately August 2, 2018 until on or about November 2018, Defendants paid Plaintiff Meza a fixed salary of $950 per week.

79.    For approximately 15 days (or three working weeks), Defendants did not pay Plaintiff Meza any wages for his work, which is approximately $2,850.

80.    Plaintiff Meza's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

81.    For example, Defendants required Plaintiff Meza to work an additional 30 minutes to 1 hour and a half past his scheduled departure time every day, and to start working 1 hour prior to his scheduled start time on at least five occasions, and did not pay him for the additional time he worked.

82.    Although Defendants kept a timesheet to record Plaintiff Meza's hours, said timesheet misrepresented the hours Plaintiff Meza actually worked. Thus, Defendants' time-tracking system was not accurate.

83.    On a number of occasions, towards the end of his employment, Defendants required Plaintiff Meza to sign a document, the contents of which were false, in order to release his weekly pay.

84.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Meza regarding overtime and wages under the FLSA and NYLL.

85.     Defendants did not provide Plaintiff Meza an accurate statement of wages, as required by NYLL 195(3).

86.     Defendants did not give any notice to Plaintiff Meza, in English and in Spanish (Plaintiff Meza's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

87.     Defendants required Plaintiff Meza to purchase "tools of the trade" with his own funds—including knives, block covers, masks, special shoes, special jackets, special shirts, and a construction hat.

*Plaintiff Edwin Alejandro Moran Salas*

88.     Plaintiff Moran was employed by Defendants from approximately September 2018 until on or about November 2018.

89.     Defendants employed Plaintiff Moran as a foreman.

90.     Plaintiff Moran regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

91.     Plaintiff Moran's work duties required neither discretion nor independent judgment.

92.     Throughout his employment with Defendants, Plaintiff Moran regularly worked in excess of 40 hours per week.

93.     From approximately September 2018 until on or about November 2018, Plaintiff Moran worked from approximately 7:00 a.m. until on or about 4:00 p.m., three days a week and from approximately 7:00 a.m. to 8:00 a.m. until on or about 5:00 p.m. to 6:00 p.m., two days a week (typically 45 to 49 hours per week).

94.     Throughout his employment, Defendants paid Plaintiff Moran his wages in cash.

95.    From approximately September 2018 until on or about November 2018, Defendants paid Plaintiff Moran $25.00 per hour.

96.    For approximately 9 days (or a working week and 4 days), Defendants did not pay Plaintiff Moran any wages for his work, which is approximately $2,125.

97.    Plaintiff Moran's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

98.    For example, Defendants required Plaintiff Moran to work an additional 1 hour to 2 hours past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

99.    Defendants never granted Plaintiff Moran any uninterrupted breaks or meal periods.

100.   Although Defendants kept a timesheet to record Plaintiff Moran's hours, Defendants did not require Plaintiff Moran to record his departure time. Thus, Defendants' time-tracking system was not accurate.

101.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Moran regarding overtime and wages under the FLSA and NYLL.

102.   Defendants did not provide Plaintiff Moran an accurate statement of wages, as required by NYLL 195(3).

103.   Defendants did not give any notice to Plaintiff Moran, in English and in Spanish (Plaintiff Moran's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

104.   Defendants required Plaintiff Moran to purchase "tools of the trade" with his own funds—including an electrical cutter machine, a packet of ten pairs of gloves, a mask, and a hammer drill.

*Plaintiff Israel Murgueitio Cordova*

105.  Plaintiff Cordova was employed by Defendants from approximately September 2018 until on or about November 2018.

106.  Defendants employed Plaintiff Cordova as a scaffold worker.

107.  Plaintiff Cordova regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

108.  Plaintiff Cordova's work duties required neither discretion nor independent judgment.

109.  Throughout his employment with Defendants, Plaintiff Cordova regularly worked in excess of 40 hours per week.

110.  From approximately September 2018 until on or about November 2018, Plaintiff Cordova worked from approximately 7:30 a.m. until on or about 4:30 p.m., two days a week and from approximately 7:30 a.m. until on or about 4:30 p.m. to 5:30 p.m., three days a week (typically 45 to 48 hours per week).

111.  Throughout his employment, Defendants paid Plaintiff Cordova his wages in cash.

112.  From approximately September 2018 until on or about November 2018, Defendants paid Plaintiff Cordova $21.25 per hour.

113.  For approximately 20 days (or four working weeks), Defendants did not pay Plaintiff Cordova any wages for his work, which is approximately $4,080.

114.  Plaintiff Cordova's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

115.  For example, Defendants required Plaintiff Cordova to work an additional 1 hour past his scheduled departure time three days a week, and did not pay him for the additional time he worked.

116. Although Defendants kept a timesheet to record Plaintiff Cordova's hours, Defendants did not require Plaintiff Cordova to keep track of his time. Thus, Defendants' time-tracking system was not accurate.

117.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cordova regarding overtime and wages under the FLSA and NYLL.

118.  Defendants did not provide Plaintiff Cordova an accurate statement of wages, as required by NYLL 195(3).

119.    Defendants did not give any notice to Plaintiff Cordova, in English and in Spanish (Plaintiff Cordova's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

120.    Defendants required Plaintiff Cordova to purchase "tools of the trade" with his own funds—including cement tools, harnesses, a lock for the harness, a hammer, a construction hat, a screwdriver, and a drill.

*Plaintiff Jesus Orellana*

121.  Plaintiff Orellana was employed by Defendants from approximately August 2, 2018 until on or about November 2018.

122.  Defendants employed Plaintiff Orellana as a bricklayer.

123.  Plaintiff Orellana regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

124.  Plaintiff Orellana's work duties required neither discretion nor independent judgment.

125.  Throughout his employment with Defendants, Plaintiff Orellana regularly worked in excess of 40 hours per week.

126.  From approximately August 2, 2018 until on or about November 2018, Plaintiff Orellana worked from approximately 8:00 a.m. until on or about 4:30 p.m. to 5:00 p.m., five days a week (typically 42.5 to 45 hours per week).

127.  Throughout his employment, Defendants paid Plaintiff Orellana his wages in cash.

128.  From approximately August 2, 2018 until on or about November 2018, Defendants paid Plaintiff Orellana $25.00 per hour.

129.  For approximately 10 days (or two working weeks), Defendants did not pay Plaintiff Orellana any wages for his work, which is approximately $2,250.

130.  Plaintiff Orellana's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

131.  For example, Defendants required Plaintiff Orellana to work an additional 15 to 30 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

132.  In addition, on two occasions, Defendants deducted an hour from Plaintiff Orellana's weekly wages for arriving 15 minutes late.

133.  Defendants never granted Plaintiff Orellana uninterrupted breaks or meal periods.

134.  Although Defendants kept a timesheet to record Plaintiff Orellana's hours, said timesheet was not always available for Plaintiff Orellana to fill out. Thus, Defendants' time-tracking system was not accurate.

135.   Defendants did not provide Plaintiff Orellana an accurate statement of wages, as required by NYLL 195(3).

136.   Defendants did not give any notice to Plaintiff Orellana, in English and in Spanish (Plaintiff Orellana's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

137.   Defendants required Plaintiff Orellana to purchase "tools of the trade" with his own funds—including a harness, a peg, a finishing trowel, a concrete screed board, a bricklayer hammer, a lanyard, a twist-lock carabiner, a pair of waterproof shoes, a measuring stick, a construction hat, a pair of pants, sweaters, shirts and jackets.

*Plaintiff Manuel Chuqui*

138.   Plaintiff Chuqui was employed by Defendants from approximately October 2018 until on or about November 2018.

139.   Defendants employed Plaintiff Chuqui as a foreman and a brick leader.

140.   Plaintiff Chuqui regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

141.   Plaintiff Chuqui's work duties required neither discretion nor independent judgment.

142.   Throughout his employment with Defendants, Plaintiff Chuqui regularly worked in excess of 40 hours per week.

143.   From approximately October 2018 until on or about November 2018, Plaintiff Chuqui worked from approximately 7:00 a.m. until on or about 3:30 p.m. to 5:00 p.m., five days a week (typically 42.50 to 50 hours per week).

144.   Throughout his employment, Defendants paid Plaintiff Chuqui his wages in cash.

145.    From approximately October 2018 until on or about November 2018, Defendants paid Plaintiff Chuqui $31.00 per hour.

146.    For approximately five days (or one working week), Defendants did not pay Plaintiff Chuqui any wages for his work, which is approximately $1,550.

147.    Plaintiff Chuqui's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

148.    For example, Defendants required Plaintiff Chuqui to work an additional 30 minutes to 1 hour past his scheduled departure time every day, and did not pay him for the additional time he worked.

149.    Defendants seldom granted Plaintiff Chuqui uninterrupted breaks or meal periods.

150.    Although Defendants kept a timesheet to record Plaintiff Chuqui's hours, Defendants did not require Plaintiff Chuqui to fill it out and did not allow him to record his departure time. Thus, Defendants' time-tracking system was not accurate.

151.    On one occasion, Defendants required Plaintiff Chuqui to sign a document, the contents of which he was not allowed to review in detail.

152.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Chuqui regarding overtime and wages under the FLSA and NYLL.

153.    Defendants did not provide Plaintiff Chuqui an accurate statement of wages, as required by NYLL 195(3).

154.    Defendants did not give any notice to Plaintiff Chuqui, in English and in Spanish (Plaintiff Chuqui's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

155. Defendants required Plaintiff Chuqui to purchase "tools of the trade" with his own funds—including drainer, drillers, machinery for demolition, face masks, glasses, gloves and boots.

*Plaintiff Manuel Mesias Chalco Lucero*

156. Plaintiff Chalco was employed by Defendants from approximately May 2018 until on or about November 2018.

157. Defendants employed Plaintiff Chalco as a bricklayer.

158. Plaintiff Chalco regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

159. Plaintiff Chalco's work duties required neither discretion nor independent judgment.

160. From approximately May 2018 until on or about November 2018, Plaintiff Chalco worked from approximately 7:00 a.m. until on or about 3:00 p.m. to 3:30 p.m., five days a week (typically 40 to 42.5 hours per week).

161. Throughout his employment, Defendants paid Plaintiff Chalco his wages in cash.

162. From approximately May 2018 until on or about November 2018, Defendants paid Plaintiff Chalco $18.00 per hour.

163. For approximately 11 days (or two working weeks and a day), Defendants did not pay Plaintiff Chalco any wages for his work, which is approximately $1,683.

164. Although Defendants kept a timesheet to record Plaintiff Chalco's hours, Defendants did not require nor allow Plaintiff Chalco to record his departure time. Thus, Defendants' time-tracking system was not accurate.

165. On three occasions, Defendants required Plaintiff Chalco to sign a document, the contents of which he was not allowed to review in detail.

166.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Chalco regarding overtime and wages under the FLSA and NYLL.

167.   Defendants did not provide Plaintiff Chalco an accurate statement of wages, as required by NYLL 195(3).

168.   Defendants did not give any notice to Plaintiff Chalco, in English and in Spanish (Plaintiff Chalco's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

169.   Defendants required Plaintiff Chalco to purchase "tools of the trade" with his own funds—including a hammer, a harness, a lock for the harness, a measuring stick, a construction hat, gloves, and masks.

*Plaintiff Percy Prempeh-Mann*

170.   Plaintiff Prempeh-Mann was employed by Defendants from approximately October 2018 until on or about November 2018.

171.   Defendants employed Plaintiff Prempeh-Mann as a laborer.

172.   Plaintiff Prempeh-Mann regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

173.   Plaintiff Prempeh-Mann's work duties required neither discretion nor independent judgment.

174.   Throughout his employment with Defendants, Plaintiff Prempeh-Mann regularly worked in excess of 40 hours per week.

175.   From approximately October 2018 until on or about November 2018, Plaintiff Prempeh-Mann worked from approximately 8:00 a.m. until on or about 4:00 p.m. to 5:00 p.m., five days a week (typically 40 to 45 hours per week).

176.    Throughout his employment, Defendants paid Plaintiff Prempeh-Mann his wages in cash.

177.    From approximately October 2018 until on or about November 2018, Defendants paid Plaintiff Prempeh-Mann $15.00 per hour.

178.    For approximately 5 days (or a working week), Defendants did not pay Plaintiff Prempeh-Mann any wages for his work, which is approximately $675.

179.    Plaintiff Prempeh-Mann's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

180.    For example, Defendants required Plaintiff Prempeh-Mann to work an additional 1 hour past his scheduled departure time two to three days a week, and did not pay him for the additional time he worked.

181.    Defendants never granted Plaintiff Prempeh-Mann uninterrupted breaks or meal periods.

182.    Although Defendants kept a timesheet to record Plaintiff Prempeh-Mann's hours, said timesheet was not always available for Plaintiff Prempeh-Mann to fill out. Thus, Defendants' time-tracking system was not accurate.

183.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Prempeh-Mann regarding overtime and wages under the FLSA and NYLL.

184.    Defendants did not provide Plaintiff Prempeh-Mann an accurate statement of wages, as required by NYLL 195(3).

185.    Defendants did not give any notice to Plaintiff Prempeh-Mann, in English and in Spanish (Plaintiff Prempeh-Mann's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

186.   Defendants required Plaintiff Prempeh-Mann to purchase "tools of the trade" with his own funds—including a pair of gloves.

*Plaintiff Raul Chavez Diaz*

187.   Plaintiff Chavez was employed by Defendants from approximately September 2018 until on or about November 2018.

188.   Defendants employed Plaintiff Chavez as a brick builder and a construction laborer.

189.   Plaintiff Chavez regularly handled goods in interstate commerce, such as construction materials and other supplies produced outside the State of New York.

190.   Plaintiff Chavez's work duties required neither discretion nor independent judgment.

191.   Throughout his employment with Defendants, Plaintiff Chavez regularly worked in excess of 40 hours per week.

192.   From approximately September 2018 until on or about November 2018, Plaintiff Chavez worked from approximately 8:00 a.m. until on or about 4:30 p.m., three days a week and from approximately 8:00 a.m. until on or about 4:30 p.m. to 5:30 p.m. two days a week (typically 42.5 to 47.5 hours per week).

193.   Throughout his employment, Defendants paid Plaintiff Chavez his wages in cash.

194.   From approximately September 2018 until on or about November 2018, Defendants paid Plaintiff Chavez a fixed salary of $1,000 per week.

195.   For approximately 15 days (or three working weeks), Defendants did not pay Plaintiff Chavez any wages for his work, which is approximately $3,000.

196.   Plaintiff Chavez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

197.    For example, Defendants required Plaintiff Chavez to work an additional 1 hour past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

198.    Although Defendants kept a timesheet to record Plaintiff Chavez's hours, Defendants did not require Plaintiff Chavez to fill it out and did not allow him to record his departure time. Thus, Defendants' time-tracking system was not accurate.

199.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Chavez regarding overtime and wages under the FLSA and NYLL.

200.    Defendants did not provide Plaintiff Chavez an accurate statement of wages, as required by NYLL 195(3).

201.    Defendants did not give any notice to Plaintiff Chavez, in English and in Spanish (Plaintiff Chavez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

202.    Defendants required Plaintiff Chavez to purchase "tools of the trade" with his own funds—including gloves, masks, and a spoon tool.

*Defendants' General Employment Practices*

203.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

204.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, inter alia, not paying them the wages they were owed for the hours they worked.

205.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

206.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

207.    Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

208.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

209.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

210.    Defendants paid Plaintiffs their wages in cash.

211.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

212.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

213.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

214.   Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

215.   Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

216.   Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

217.   Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were

employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

218.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records, as required under the FLSA.

219.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

220.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

221.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

222.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

223.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

224.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

225.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

226.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

227.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

228.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

229.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

230.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

231.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

232.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

233.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

234.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

235.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

236.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

237.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

238.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

239.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

240.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

241.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the

employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

242. Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

243. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

244. With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

245. Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

246. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

247. Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs,

further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

248.   Plaintiffs were damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

249.   Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

250.   Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

251.   Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)   Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)   Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)   Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)      Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)      Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)      Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(k)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)      Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
         February 13, 2019

                                    MICHAEL FAILLACE & ASSOCIATES, P.C.

                            By:        /s/ Michael Faillace
                                    Michael Faillace [MF-8436]
                                    60 East 42nd Street, Suite 4510
                                    New York, New York 10165
                                    Telephone: (212) 317-1200
                                    Facsimile: (212) 317-1620
                                    *Attorneys for Plaintiffs*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 15, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Andres Castillo

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                        Andres Corrillo

Date / Fecha:                             15 de enero 2019

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 15, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Edson Abel Meza Alvarez
Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      15 de enero de 2019

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 15, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Edwin Alejandro Moran Salas
Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:          15 de enero de 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

January 23, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    <u>Israel Murgueitio Cordova</u>

Legal Representative / Abogado:   <u>Michael Faillace & Associates, P.C.</u>

Signature / Firma:

Date / Fecha:                     <u>23 de enero de 2019</u>

_Certified as a minority-owned business in the State of New York_

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 15, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Manuel Chuqui

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     15 de enero 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 15, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Jesus  Orellana

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                                15 de enero 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 15, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Percy Prempeh-Mann

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     15 de enero de 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 15, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Raul Chavez Diaz

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                                15 de enero de 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

January 16, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Manuel Mesias Chalco Lucero

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           16 de enero de 2019

*Certified as a minority-owned business in the State of New York*